No. 3880

Second Circuit

———

CRAWFORD v. SOAP ET AL.

———

(November 7, 1930. Opinion and Decree.)

———

J. B. Crow, of Shreveport, attorney for plaintiff, apellant.

Barksdale, Bullock, Warren, Clark & Van Hook; Wilson & Abramson; J. L. Dorman, and John T. Carpenter, of Shreveport, attorneys for defendants in rule, appellees.

ODOM, J. In the year 1929, J. R. Soap entered into a contract with J. W. Shirley to build for him a dwelling house on a lot of ground which he owned, for a stipulated price, the said Shirley to furnish all material and labor. The contract was not reduced to writing and recorded and bond furnished, as required by section 2, Act 298 of 1926. Shirley purchased the material, employed laborers and completed the house, but failed to pay some of the laborers the wages due them and failed to

pay some of those who had furnished material for the erection of the structure. In conformity with section 12 of the act above cited, these laborers and materialmen recorded in the office of the recorder of mortgages, within the time prescribed, affidavits of their claims. By the terms of the act, they had a lien and privilege on the building and the land upon which it was situated and had a personal right of action against the owner for the amount of their claims for a period of one year.

The laborers exercised their rights, filed suit against the owner, and obtained judgment for the full amount of their claims. They procured the issuance of a writ of fieri facias, under which the sheriff seized, advertised and sold the property to one J. A. Leindecker, for $550, which was paid in cash by the purchaser to the sheriff.

Prior to the sale, the sheriff was furnished with a certificate of mortgages which showed recorded liens against the property in favor of not only the laborers, who had carried their liens to judgment, but in favor of the materialmen as well, and, for that reason, he refused to pay the proceeds of the sale to the seizing creditors. Whereupon, the seizing creditors, the laborers (plaintiffs here) ruled him to show cause why he should not pay the claims in full, as the amount in his hands was sufficient for that purpose. For answer to the rule, the sheriff set up that there were other recorded liens against the property and divulged the names of the other lienholders and the amounts due them, and asked that they be cited and brought into court to assert whatever rights they might have. Those who had recorded liens for material came into court and asserted that their liens were of equal rank with those of the laborers for their wages, and asked that it be so decreed and that the funds in the hands of the sheriff be paid to all of the claimants pro rata, inasmuch as the amount in the hands of the sheriff was not sufficient to pay all the claimants in full. The judgment of the lower court recognized the claims of the laborers and materialmen as of equal rank and ordered the proceeds of the sale paid to them pro rata. From this judgment, the laborers, plaintiffs here, have appealed.

## OPINION

The first and main issue before the court is whether, under Act 298 of 1926, page 552, the lien and privilege of laborers for their wages primes that of those who furnish materials when, as in this case, all such claims were filed and recorded in accordance with the act.

The rights and privileges of these claimants and the liability of the owner are governed by section 12 of the act because the contract was not reduced to writing and recorded. That section provides that all those who perform any service or labor or furnish material for the erection of a building may record a copy of their estimates or an affidavit of their claims in the office of the recorder of mortgages of the parish in which the work is done, which, if recorded within a certain time, "shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated in favor of any such person who shall have performed service or labor or delivered material in connection with the said work of improvement, as his interest may appear."

Section 1 of the same act also provides that laborers and materialmen "shall have a lien for the payment in principal and

interest of such work or labor performed or materials * * * furnished * * * upon the land and improvements on which the work or labor has been done or material * * * furnished."

Under section 9 of the act, these privileges are of equal rank. That section reads as follows:

"The privileges herein granted, except where otherwise provided, shall be of equal rank, if recorded 'as provided herein, and shall be paid pro-rata out of the balance of the funds in the hands of the owner, or by the surety on the bond, if such balance and the amount of liability of such surety are not sufficient to pay them in full."

This language is plain and unambiguous. It is not "otherwise provided" in the act that the privilege of the laborers shall prime that of the materialmen. These liens are superior to all other claims against the land and improvements "except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or resale to and from a regularly organized homestead or building and loan association, if said vendor's privilege or mortgage exist and has been duly recorded before the work or labor is begun or any material is furnished."

Therefore, the claims of the laborers and materialmen prime those of mortgages and vendors only in case the work or labor was begun or the material furnished prior to the recordation of such mortgages or vendor's liens. But the act goes further in both sections 1 and 12 and reads:

"Provided, however, that the claim for wages of a laborer, for the work actually performed by said laborer on any building, shall when presented and recorded by said laborer in accordance with the terms of this act, create a lien on the land and improvements, which will prime the rights of mortgagees or vendors."

In ranking the claims as between the laborers on the one hand and mortgagees and vendors on the other, this latter clause grants to mortgagees and vendors no superior rights over the laborers by virtue of having recorded their claims prior to the date on which the labor was begun, but makes the claims of the laborers prime those of the mortgagees and vendors in either event; whereas, in ranking the claims as between materialmen on the one hand and the mortgagees and vendors on the other, those of the former prime those of the latter only in event the material was furnished prior to the date on which the mortgages were recorded. Therefore, under the act laborers have some advantage over materialmen.

Now counsel for the laborers, plaintiffs here, contends that by giving to the laborers an advantage over mortgagees and vendors which was not granted to materialmen, the legislature intended to subordinate the privilege of materialmen to that of the laborers on the building and land.

We do not think so and cannot so hold, in view of the plain language of section 9 of the act, which provides that the privileges created by the act shall be of equal rank, except where otherwise provided. It is nowhere provided in the act that the privilege of the laborer on the building and land shall prime that granted to those who furnish the material for the structure. The act grants a lien and privilege in favor of both laborers and materialmen on the building and land for labor and material furnished, and makes such privileges, and others granted by the act, superior to all others, except taxes, and except the claims of mortgagees and

vendors whose acts were recorded prior to the date on which the labor was begun or materials furnished. The act does not create or grant the privilege for taxes or local assessments or that in favor of mortgagees and vendors. These were created or granted by special laws. The act under consideration merely recognizes those privileges and fixes their rank as against those created by it. But as to the privileges created by the act, they are made of equal rank, unless the act itself provides otherwise and, as stated, the act makes no distinction between the claims of laborers and materialmen.

Another point raised by counsel for appellant is that plaintiffs (the laborers) were first to exercise the right granted by the act of putting their claims into judgment and having the property seized and sold. We find nothing in the act indicating that it was intended that those who proceed first shall have prior rights over the others. Under the act, the registry of the claim within a certain time, creates the "lien and privilege upon the building," etc., and once the claim is registered in accordance with the provisions of the act, it takes such rank as the act gives it and that rank is preserved against the property. It is not the suit or seizure which confers the privilege or fixes its rank, but the registry of the claim in the office of the recorder of mortgages.

Plaintiff makes an alternative demand which is that the purchaser of the property at sheriff's sale should be required to pay a sufficient amount to the sheriff to enable him to satisfy in full all the existing, valid liens and encumbrances against the property purchased. Counsel says in his brief that "this demand is based upon the proposition that the sheriff, before he could sell the property, was required to announce that all prior liens and mortgages would have to be taken care of by the purchaser at sheriff's sale."

We find no merit in this contention. There was no sale when the property was first offered, for the reason that there was no bid equal to two-thirds of the appraised value. It was re-advertised to be sold to the highest bidder for what it would bring. Article 682 of the Code of Practice provides that "at this second adjudication, the thing seized shall be adjudged to the highest and last bidder for whatever it will bring", and Article 684 of the Code of Practice, that "if the price offered in this case by the highest and last bidder is not sufficient to discharge the privileges and mortgages existing on the property and which have a preference over the judgment creditor, there shall be no adjudication."

But there were no privileges and mortgages existing on the property which had a preference over the judgment creditor, and, therefore, the adjudication to the highest and last bidder was legal. The purchaser complied with his bid by paying to the sheriff in cash the amount of the adjudication and the title to the property passed to him. In judicial sales, "the purchaser is bound for nothing beyond the price of his adjudication." (Code of Practice, art. 708.)

The judgment appealed from is affirmed, with all costs.